# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                       No.    CV 16-582 JB/GBW
                                                      CR 04-788 JB

STEPHEN REX ALLEN,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendant's Motion to Vacate and Correct Sentence Pursuant to 28 U.S.C. § 2255. *Doc. 1*.[1] Having reviewed the briefing (*docs. 11, 14*) and being fully advised, I recommend the Court deny Defendant's Motion.

### I.  FACTUAL BACKGROUND

Defendant was charged with bank robbery, in violation of 18 U.S.C. § 2113(a), in a one-count indictment that was filed on April 27, 2004. *Cr. doc. 2*. The maximum sentence for this offense under the applicable federal statute is twenty years' imprisonment. 18 U.S.C. § 2113(a). Defendant entered a plea of guilty to the indictment pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure on July 27, 2005. *Cr. doc. 27*.

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-cv-582-JB-GBW. Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 04-cr-788-JB. For filings made on both dockets, only the civil docket number is given.

In the plea agreement, Defendant acknowledged that the statutory maximum sentence for his offense was "imprisonment for a period of not more than twenty (20) years" and that the applicable sentencing guidelines were advisory. *Cr. doc. 27* at 2. The agreement contained the parties' stipulations that Defendant was entitled to a three-level guideline reduction for acceptance of responsibility and that the United States would "recommend the lower end of the appropriate guideline imprisonment range" at sentencing. *Id.* at 3. Defendant acknowledged that these stipulations were not binding on the Court. *Id.* at 3-4.

Following Defendant's plea of guilty, the United States Probation Office prepared a presentence report (PSR) to aid the Court in sentencing. Defendant's sentencing guideline range was determined pursuant to U.S.S.G. §§ 2B3.1 and 4B1.1. As reflected in the PSR, Defendant had prior convictions under New Mexico state law of robbery and tampering with evidence in 1998, and robbery and armed robbery in 1992. PSR ¶ 23. Therefore, the PSR concluded that Defendant had two prior felony "crime of violence" convictions under the definition found in U.S.S.G. § 4B1.2(a)(2).[2] *Id.* These two previous crimes of violence, coupled with the fact that the instant offense of bank robbery was itself a crime of violence, qualified Defendant as a career offender under the guidelines. *Id.*; U.S.S.G. § 4B1.1(a). Consequently, Defendant's base offense level

_____

[2] This provision was amended on August 1, 2016. The amendment deleted the residual clause discussed herein from the definition of "crime of violence." The remainder of the definition remained the same. Because it is the relevant provision, citations to U.S.S.G. § 4B1.2(a)(2) refer to the pre-2016 amendment version.

was calculated at 32 pursuant to U.S.S.G. § 4B1.1(b).  PSR ¶ 19.  After application of the

three-level reduction for acceptance of responsibility, Defendant's total offense level

was calculated at 29.  PSR ¶¶ 24, 25.  With a criminal history category of VI, Defendant's

guideline range was 151 to 188 months.  PSR ¶¶ 33, 69.

Prior to sentencing, the Court considered Defendant's sentencing memorandum,

which requested an additional three-level downward departure on the asserted basis

that the bank robbery offense should be treated as an attempt under U.S.S.G. §

2X1.1(b)(1).  *Cr. doc. 37*.  The memorandum also asked the Court to deviate from the

guidelines and sentence Defendant without the career offender enhancement under §

4B1.1  *Id.*  The Court denied these requests, but granted Defendant's request that his

sentence run concurrently with his four-year state sentence imposed for a different

robbery committed on the same day as the bank robbery.  *Id.* at 12; *cr. doc. 43*.  Apart

from his entreaties that the Court deviate from the guidelines and treat the bank

robbery as an attempt, Defendant had no objections to the PSR.  *Cr. doc. 47*.  The Court

adopted the PSR's factual findings and guideline calculations and sentenced Defendant

to 151 months of imprisonment followed by three years of supervised release.  *Id.*  On

appeal, Defendant's sentence was upheld as reasonable by the Tenth Circuit.  *Cr. doc.*

*54*.

## II.   OVERVIEW

Defendant's Motion argues that his conviction of bank robbery under federal law, as well as his prior convictions of two robbery offenses and one armed robbery offense under New Mexico law, are no longer crimes of violence in light of *United States v. Johnson*, 135 S. Ct. 2551 (2015).  *Doc. 1* at 3-6.

In *Johnson*, the Supreme Court held that the residual clause of the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B) – "or otherwise involves conduct that presents a serious potential risk of physical injury to another" – is unconstitutionally vague.  135 S. Ct. at 2563.  Therefore, individuals could not be subject to the ACCA if their underlying prior convictions qualified as "violent felonies" only under the vague residual clause.  *Id.*

While Defendant was not sentenced under the ACCA, his career offender enhancement under the guidelines relied upon the definition of "crime of violence," which includes an almost identical residual clause to the one ruled unconstitutionally vague in *Johnson*.  *See* 18 U.S.C. § 924(e)(2)(B)(i); U.S.S.G. § 4B1.2(a)(1).  Because of the overlap between the guidelines definition of "crime of violence" and the ACCA definition of "violent felony," the Tenth Circuit has held that "the Supreme Court's analysis under the ACCA 'applies equally to the sentencing guidelines.'"  *United States v. Charles*, 576 F.3d 1060, 1068 n.2 (10th Cir. 2009) (quoting *United States v. Tiger*, 538 F.3d 1297, 1298 (10th Cir. 2008)).  The Court may therefore apply relevant precedent

4

interpreting one provision interchangeably to the other. Using this approach in *United States v. Madrid*, 805 F.3d 1204, 1210-11 (10th Cir. 2015), the Tenth Circuit held that use of the residual clause in U.S.S.G. § 4B1.2 to calculate and enhance sentencing guideline ranges is unconstitutional because, like its twin ACCA clause struck down in *Johnson*, the residual clause is void for vagueness. Consequently, the United States has conceded this point.[3] However, *Madrid* was decided on direct appeal, and the *Johnson / Madrid* rule therefore has no applicability to Defendant's sentence unless it applies retroactively.

Assuming *arguendo* that *Johnson* does apply retroactively to guidelines sentencing cases, the Court must then determine whether, absent the residual clause, Defendant's offenses of federal bank robbery, New Mexico robbery, and New Mexico armed robbery remain "crimes of violence" under the guidelines. *See* U.S.S.G. § 4B1.1(a). If they do, then the career offender enhancement was rightfully included in Defendant's sentencing guideline calculation, and he is not entitled to resentencing.

To answer that question, the Court must determine if those offenses qualify as crimes of violence under the "elements clause" of the "crime of violence" definition— that is, whether each type of robbery "has as an element the use, attempted use, or

---

[3] Though this issue is resolved for the time being in this Circuit, other courts have concluded otherwise. *See, e.g., United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015). This issue is before the Supreme Court in *Beckles v. United States* (S. Ct. No. 15-8544). Indeed, at oral argument, several Justices appeared to express skepticism about holding the guideline provision unconstitutional on vagueness grounds. *See* Transcript of Oral Argument at 9-15, *Beckles v. United States* (S. Ct. No. 15-8544) (2016). Obviously, if in *Beckles*, the Supreme Court determines that the guideline provision is not void for vagueness, Defendant's claim fails.

threatened use of physical force against the person of another[.]" *Id.* at (a)(1). The

elements clause of the definition of "crime of violence" under the guidelines is identical

to the corresponding clause in the definition of "violent felony" under the ACCA. *See*

18 U.S.C. § 924(e)(2)(B)(i); U.S.S.G. § 4B1.2(a)(1). In *Johnson v. United States*, 559 U.S. 133,

140 (2010),[4] the Supreme Court explained that the term "physical force" as used in the

ACCA "means *violent* force—that is, force capable of causing physical pain or injury to

another person." Nonetheless, the force required to satisfy that element need not be

sufficient to cause serious injury—it "might consist . . . of only that degree of force

necessary to inflict pain—a slap in the face, for example." *Id.* at 1272.

When determining whether a prior conviction constitutes a "crime of violence"

under the guidelines, the Court generally employs the categorical approach, which

involves "looking only to the statutory definitions of the prior offenses, and not to the

particular facts underlying those convictions." *United States v. Perez-Vargas*, 414 F.3d

1282, 1284 (10th Cir. 2005) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

However, if the statute defining the prior offense is divisible, the Court will then apply

what is known as a "modified-categorical approach." *See Mathis v. United States*, 136 S.

Ct. 2243, 2249 (2016) (explaining that "divisible" statutes are those that "list elements in

the alternative, and thereby define multiple crimes"). Under this approach, the Court

should consult "a limited class of documents (for example, the indictment, jury

---

[4] To avoid confusion, this case will be referred to as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of the ACCA (hereinafter referred to as *Johnson II*).

instructions, or plea agreement and colloquy)" to determine whether the defendant in a particular case was convicted of a crime that categorically qualifies as a crime of violence.  *Id.*

Finally, even if any of Defendant's robbery offenses do not qualify under the elements clause of the "crime of violence" definition, the Court must consider whether those offenses nonetheless qualify as enumerated offenses under the commentary to the sentencing guidelines applicable to Defendant at the time of his sentencing.  *See* U.S.S.G. § 4B1.2 cmt. n.1 (2005).

In order to be entitled to resentencing on the basis that his conviction for bank robbery and prior convictions for robbery and armed robbery do not qualify as "crimes of violence," Defendant must first establish that the *Johnson II / Madrid* rule applies retroactively, and that the career offender enhancement was applied to his sentence pursuant to the residual clause.  Because (i) the application of *Johnson II* to the guidelines should not be given retroactive effect, and (ii) federal bank robbery, New Mexico robbery, and New Mexico armed robbery all remain crimes of violence under both the elements clause and the enumerated offenses clause of U.S.S.G. § 4B1.2(a) after *Johnson II*, I recommend denying Defendant's Motion.

## III.   RETROACTIVITY

Defendant's Motion argues that his various robbery convictions are no longer "crimes of violence" under the guidelines in light of the Supreme Court's decision in

*Johnson II* to strike down the residual clause of the ACCA as unconstitutionally vague. *Doc. 1* at 3-6.  However, Defendant was not sentenced pursuant to the ACCA. Instead, he received an enhancement to his sentencing guideline range pursuant to the definition of "crime of violence" in U.S.S.G. § 4B1.2.  That guideline provision, which resulted in a ten-level increase to the base offense level pursuant to U.S.S.G. § 4B1.1, contained a residual clause identical to the residual clause in the ACCA—defining as a "crime of violence" any offense under federal or state law, punishable by imprisonment of a year or more, that ". . . involves conduct that presents a serious potential risk of physical injury to another[.]"  *See* U.S.S.G. § 4B1.2(a)(2).  Because Defendant's motion is a collateral attack on his sentence, he would not be entitled to relief unless he overcomes the first hurdle of establishing that the application of *Johnson II* to the guidelines should be given retroactive effect.

Defendant's reply in support of his Motion asks the Court to consider a recent decision in this district holding that the *Johnson II* rule extends to the residual clause of the guidelines and applies retroactively in guidelines cases.  *Doc. 14* at 2 (citing *United States v. Martinez, doc. 25,* No. CV 16-0449 RB/LAM (D.N.M. Dec. 2, 2016)).  Specifically, Defendant asserts that the *Martinez* court rested its holding "in part" on the fact that the United States "had taken inconsistent positions" regarding the retroactivity of a rule that *Johnson II* applies to the guidelines residual clause, and that this Court should reach the same conclusion on the same basis.  *Doc. 14* at 2.  However, having reviewed the

opinion in question, the undersigned disagrees that its holding regarding retroactivity was based on the inconsistency of the United States' position.  Rather, the court there merely "note[d] with concern" such inconsistency, after having already adopted the reasoning of the Magistrate Judge's PFRD in that case.[5]  *See Martinez*, *doc. 25* at 12.  The *Martinez* court also based its holding in part on its finding that the United States' cursory objection to the PFRD—which asked the Court to "adopt the reasoning in *United States v. Rodney Miller*, [No. CV 16-566 WJ/WPL], and hold that *Johnson II* does not apply retroactively to Sentencing Guideline cases on collateral review"—was insufficiently specific.  *Id.*  Ultimately, the undersigned will focus on the merits of the retroactivity argument.  On that front, the undersigned finds another recent decision more persuasive.  *See Martell v. United States*, *doc. 12*, No. CV 16-0681 JCH/GBW (D.N.M. Feb. 8, 2017) ("[T]he application of *Johnson* to the guidelines would not have retroactive effect under the Teague analysis because it would be a non-watershed procedural rule.").

Because extending *Johnson II* to the sentencing guidelines establishes a new rule, the question of retroactivity is governed by the framework set out in *Teague*.  489 U.S. at 309-13.  "[A]s a general matter, 'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are

---

[5] To the extent that the United States has taken inconsistent positions regarding the retroactivity of the *Johnson II* rule in guidelines cases, the undersigned notes that the position taken by the United States in the present matter is consistent with its position in *Beckles* (S. Ct. No. 15-8544).  *See* 2016 WL 5116851 (Appellate Brief of the United States).

announced.'"  *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (quoting *Teague*, 489

U.S. at 310).  There are two exceptions to this general rule: first, "new substantive rules

generally apply retroactively," *id*. (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004))

(alteration omitted) (emphasis omitted); and second, "new 'watershed rules of criminal

procedure,' which are procedural rules 'implicating the fundamental fairness and

accuracy of the criminal proceeding,' will also have retroactive effect." *Id*. (quoting *Saffle*

*v. Parks*, 494 U.S. 484, 495 (1990)).

First, the Court must decide whether the application of *Johnson II* to the

guidelines constitutes a new substantive rule or a new procedural rule.  "A rule is

substantive rather than procedural if it alters the range of conduct or the class of

persons that the law punishes."  *Schriro*, 542 U.S. at 353.  "This includes decisions that

narrow the scope of a criminal statute by interpreting its terms, as well as constitutional

determinations that place particular conduct or persons covered by the statute beyond

the State's power to punish."  *Id*. at 351-52 (citations omitted).  By contrast, procedural

rules "regulate only the manner of determining the defendant's culpability[.]"  *Id*. at 353

(emphasis deleted).  Thus, rules that alter "the range of permissible methods for

determining whether a defendant's conduct is punishable" by "allocating

decisionmaking authority" are procedural.  *Id*.  Procedural rules also do not create a

class of persons convicted of conduct that is not lawfully criminalized, "but merely raise

the possibility that someone convicted with use of the invalidated procedure might

have been acquitted otherwise." *Id*. at 352.

Under this framework, it is unsurprising that the Supreme Court concluded that *Johnson II*'s invalidation of the ACCA's residual clause was a new substantive rule because it "changed the substantive reach of the Armed Career Criminal Act …." *See Welch*, 136 S. Ct. at 1265. As the Court explained,

> Before *Johnson*, the Act applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause. An offender in that situation faced 15 years to life in prison. After *Johnson*, the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison. The residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that even the use of impeccable factfinding procedures could not legitimate a sentence based on that clause.

*Id*. (quotation and citations omitted).

In contrast, the invalidity of a given sentencing guideline provision is not nearly so impactful. While it may change a defendant's sentencing guideline range, it will not change the maximum or minimum sentence to which he is subject. Consequently, a sentence imposed, even after considering a guideline provision later determined to be invalid, will never exceed the statutorily authorized sentence for the crime for which the defendant was convicted. Thus, such a sentence is not illegal or unlawful. *See Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (360-month sentence imposed following an erroneous determination that defendant was a career offender pursuant to the sentencing guidelines was "not unlawful" because "[a]n unlawful or illegal sentence

is one imposed without, or in excess of, statutory authority.").  In other words, unlike in

*Johnson II*, where the ACCA increased the statutory maximum sentence, the sentence

imposed using the problematic guideline provision can indeed be "legitimate[d]"

merely by a judge's determination that the sentence was still appropriate.  *Welch*, 136 S.

Ct. at 1265; *see United States v. Booker*, 543 U.S. 220, 246 (2005) (sentencing guidelines are

advisory).  Therefore, the application of *Johnson II* to invalidate the U.S.S.G. § 4B1.2(a)(2)

guideline provision has none of the earmarks of a "substantive" rule change under

*Teague*.

Indeed, the Supreme Court has characterized errors in calculating the advisory

guidelines range as "procedural."  *See, e.g., Peugh v. United States*, 133 S. Ct. 2072, 2083

(2013) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  This characterization is

accurate because the calculation of a defendant's offense level is but one step in a multi-

step sentencing procedure.  Importantly, while "'a sentence within the applicable

Guidelines range is presumptively reasonable[,]' *United States v. Terrell*, 445 F.3d 1261,

1264 (10th Cir. 2006), '[t]his presumption, however, is an appellate presumption, not

one that the trial court can or should apply.'"  *United States v. Nolf*, 30 F. Supp. 3d 1200,

1212 (D.N.M. June 20, 2014) (Browning, J.); *see also Rita v. United States*, 551 U.S. 338,

347–48 (2007); *Gall*, 552 U.S. at 40-41; *Kimbrough v. United States*, 552 U.S. 85, 90–91

(2007).  "Instead, the trial court must undertake the § 3553(a) balancing of factors

without any presumption in favor of the advisory Guideline sentence."  *Nolf*, 30 F.

Supp. 3d at 1212 (citing *Rita*, 551 U.S. at 347–48; *Gall*, 552 U.S. at 40; *Kimbrough*, 552 U.S. at 90–91).  Consequently, if *Johnson II* applies to invalidate all enhancements which stem from the §4B1.2(a)(2) residual clause, that new rule merely alters one non-determinative step in the sentencing process.  As such, the new rule would be procedural.  *See Hawkins II v. United States*, 724 F.3d 915, 917-18 (7th Cir. 2013) (holding that "errors in applying advisory guidelines are procedural," and opining that a new rule that erroneously sentencing a defendant under current Guidelines rather than less punitive Guidelines in effect at the time of offense is a violation of the Ex Post Facto Clause would therefore not be applied retroactively under *Teague*).

Having concluded that the application of *Johnson II* to the guidelines is a procedural rule, it can only be applied retroactively if it constitutes a "watershed" rule of criminal procedure.  *Saffle*, 494 U.S. at 495.  To do so, "the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding."  *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002) (citation, quotation, and emphasis omitted).  This exception is a narrow one.  *Johnson v. McKune*, 288 F.3d 1187, 1197–98 (10th Cir. 2002). Watershed rules are on the magnitude of the rule announced in *Gideon v. Wainwright*, 372 U.S. 335 (1963).  *Mora*, 293 F.3d at 1219 (citing *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).  For example, the Tenth Circuit has held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that any fact that increases

13

the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury and proved beyond a reasonable doubt, did not qualify as a watershed decision.

*Id.*; *see also United States v. Bellamy*, 411 F.3d 1182, 1186-88 (10th Cir. 2005) (*Booker*

constituted a non-watershed procedural rule under *Teague* analysis).  Given the high

bar, it is easy to conclude that application of *Johnson II* to the guidelines is not a

watershed decision.

Because the application of *Johnson II* to the guidelines would be a non-watershed

procedural rule, it would not have retroactive effect to Defendant's sentence.  Therefore,

I recommend denying Defendant's motion on that ground.

## IV.     Defendant's Offenses Remain "Crimes of Violence."

Even if Defendant were to overcome the retroactivity hurdle, he must also

establish that he only qualified as a career offender pursuant to the residual clause of

the guidelines.  Therefore, should the Court disagree with the recommendation

regarding waiver and non-retroactivity, the undersigned will also address whether

Defendant's convictions for New Mexico simple robbery and armed robbery, as well as

the offense of federal bank robbery, all satisfy the definition of "crime of violence"

under U.S.S.G. § 4B1.2 even after redacting its residual clause.

> ### A.     Federal bank robbery is a "crime of violence" under the elements clause of the guidelines.

Defendant argues that bank robbery under 18 U.S.C. § 2113(a), the instant offense

precipitating his challenged sentence, is not a "crime of violence" under the elements

clause. *Doc. 14* at 3-4. That statute provides, in pertinent part:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C.A. § 2113(a).[6]

Defendant asserts that he was specifically indicted for the crime of bank robbery "by means of intimidation" under this statute, and that the "intimidation" version of the offense does not require intent to intimidate. *Doc. 14* at 3-4. Defendant therefore urges the Court to apply the modified categorical approach to find that bank robbery by means of intimidation under the statute is an offense that does not require the use or threatened use of violent force against the person of another. *Id.*

A review of the Tenth Circuit Pattern Jury Instruction on the offense of bank robbery confirms that the statute is divisible. That instruction provides applicable bracketed alternative elements constituting various separate offenses defined under the same statute. *See* Tenth Circuit Pattern Jury Instructions Criminal § 2.77 at 259 (2011). Turning to the indictment in the instant matter, Defendant was indeed charged with, and later pled guilty to, the offense of bank robbery by means of intimidation. *See cr. docs. 2, 25, 27*. This offense contains the elements that Defendant (1) by means of

---

[6] 18 U.S.C.A. § 2113(a) contains a second paragraph following the one cited herein, which criminalizes "enter[ing] or attempt[ing] to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank." Defendant concedes he was convicted pursuant to the first paragraph of § 2113(a), and the Court therefore need not address which—if any—offenses under the second paragraph constitute crimes of violence. *See doc. 14* at 3 n.1.

intimidation (2) unlawfully and intentionally attempted to take from the person and presence of another (3) money belonging to and in the care, custody, control, management, and possession of a bank.  *See cr. doc. 2*; *see also* Tenth Circuit Pattern Jury Instructions Criminal § 2.77 at 259 (2011).

The Tenth Circuit Pattern Jury Instruction on the offense of bank robbery further explains:

> To take "by means of intimidation" is to say or do something in such a way that a person of ordinary sensibilities would be fearful of bodily harm.  It is not necessary to prove that the alleged victim was actually frightened, and neither is it necessary to show that the behavior of the defendant was so violent that it was likely to cause terror, panic, or hysteria.  However, a taking would not be by "means of intimidation" if the fear, if any, resulted from the alleged victim's own timidity rather than some intimidating conduct on the part of the defendant.  The essence of the offense is the taking of money or property accompanied by intentional, intimidating behavior on the part of the defendant.

*Id.* at 259-60.

A conviction of this crime therefore requires proof that Defendant engaged in "intentional, intimidating behavior."  Defendant is correct in stating that the crime does not entail the specific intent to intimidate.  *See United States v. Armstrong*, 1997 WL 337540, at *2 (10th Cir. June 19, 1997) (unpublished); *see also United States v. Gonyea*, 140 F.3d 649, 653-54 (6th Cir. 1998); *United States v. Johnston*, 543 F2d 55, 58 (8th Cir. 1987). However, "[t]he presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA."  *United States v. Ramon Silva*, 608 F.3d 663, 673 (10th Cir. 2010).  This

directive applies equally to determining whether a conviction qualifies as a crime of violence.  In *Ramon Silva*, the Tenth Circuit considered whether "apprehension causing" aggravated assault (i.e., "engaging in conduct with a deadly weapon that causes the victim to believe he or she was about to receive a battery") constituted a violent felony under the ACCA, despite the statute's requirement of only general criminal intent rather than specific intent to cause apprehension in the victim.  *Id.* at 669-73.  The court held that as long as a crime requires that a defendant intentionally engaged in conduct that "constitut[ed] the threatened use of physical force," such a crime has as an element the threatened use of physical force meeting the *Johnson I* standard, even if the defendant did not specifically intend to communicate such threat of force.  *Id.* at 673. *See also United States v. Lewis*, 628 F.2d 1276, 1279 (10th Cir. 1980) (explaining that while "[f]elonious intent is not specifically incorporated into the offense of bank robbery under the first paragraph of [18 U.S.C.A.] § 2113(a)," nevertheless "the offense is so 'unambiguously dangerous to others that the requisite mental intent is necessarily implicit in that description.'" (quoting *United States v. De Leo*, 422 F.2d 487, 491 (1st Cir.), *cert. denied*, 397 U.S. 1037 (1970))).

Like "apprehension-causing" aggravated assault, the federal crime of bank robbery by means of intimidation requires intentional conduct that causes "a person of ordinary sensibilities [to] be fearful of bodily harm"—in other words, conduct that constitutes the threatened use of "force capable of causing physical pain or injury to

another person."  Tenth Circuit Pattern Jury Instructions Criminal § 2.77, at 259 (2011);

*Johnson I*, 559 U.S. at 140; *see also United States v. Lajoie*, 942 F.2d 699, 701 n.5 (10th Cir.

1991) ("Intimidation in the context of 18 U.S.C. § 2113(a) is defined as an act by [a]

defendant reasonably calculated to put another in fear or conduct and words . . .

calculated to create the impression that any resistance or defiance by the [individual]

would be met by force.") (citations omitted).  The crime also requires knowledge on the

part of Defendant that the taking of the property was by intimidation—that is,

knowledge that his conduct would cause an ordinary person to be fearful of bodily

harm.  *See Carter v. United States*, 530 U.S. 255, 268 (2000).  Bank robbery by means of

intimidation is therefore a crime of violence under the elements clause of the guidelines.

Most importantly, the Tenth Circuit has recently issued two rulings compelling

this conclusion: *United States v. Harris*, 844 F.3d 1260 (10th Cir. 2017) and *United States v.

McGuire*, __ F. App'x __, 2017 WL 429251 (10th Cir. Feb. 1, 2017).  In upholding the

lower court's holding that a violation of § 2113(a) qualifies as a crime of violence under

the elements clause of the guidelines, the *McGuire* court explained that "[a]lthough §

2113(a) includes a taking 'by intimidation,' courts have stated that 'intimidation'

involves the threat of physical force."  2017 WL 429251, at *2.  In support of that

proposition, the court then cited the holding of *Harris* that "Colorado robbery, whether

committed by force, or by threats or intimidation, 'has as an element the use or

threatened use of physical force against another'" under the *Johnson I* standard.  *Id.*

18

(citing *Harris*, 844 F.3d 1260, 1270-71). At least three other circuits have also come to the conclusion that bank robbery "by means or intimidation" under 18 U.S.C. § 2113(a) remains a crime of violence post-*Johnson II*. *See United States v. McBride*, 826 F.3d 293, 295-96 (6th Cir. 2016); *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016); *United States v. Jenkins*, 2016 WL 3101281, at *4 (11th Cir. June 3, 2016) (unpublished).

I therefore recommend that the Court find that Defendant's offense of bank robbery by means of intimidation in violation of 18 U.S.C. § 2113(a) remains a crime of violence under the elements clause of the guidelines. *See* U.S.S.G. § 4B1.2(a)(1).

>   B.     *Simple robbery in New Mexico is a "crime of violence" under the elements clause of the guidelines.*

Defendant does not dispute that he was convicted of simple robbery pursuant to N.M.S.A. § 30-16-2. *See doc. 1* at 5-6 (citing the uniform jury instruction corresponding to N.M.S.A. § 30-16-2). That statute sets forth the elements of the crime as follows:

>   Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, *by use or threatened use of force or violence*.
>   Whoever commits robbery is guilty of a third degree felony.
>   Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

N.M.S.A. § 30-16-2 (emphasis added).

New Mexico courts have held that the "use or threatened use of force" must be against the person of another to satisfy this element. *See, e.g., State v. Bernal*, 146 P.3d

289, 296 (N.M. 2006); *State v. Curley*, 939 P.2d 1103, 1106 (N.M. Ct. App. 1997).  For

example, the New Mexico Supreme Court has instructed that, in contrast to the statute

criminalizing larceny, the robbery statute "is clearly designed to protect citizens from

violence . . . .   Robbery is not merely a property crime, but a crime against a person."

*Bernal*, 146 P.3d at 296.   The New Mexico Court of Appeals has similarly explained that

the requirement that property be taken with sufficient force "so as to overcome the

resistance of attachment" before larceny is elevated to robbery is intended to reflect "the

increased danger to the person that robbery involves over the offense of larceny."

*Curley*, 939 P.2d at 1106.

The state law jurisprudence regarding the statute instructs that "[t]he use of

force, violence, or intimidation is an essential element of robbery."  *State v. Lewis*, 867

P.2d 1231, 1233 (N.M. Ct. App. 1993).  "The force or intimidation is the gist of the

offense."  *State v. Sanchez*, 430 P.2d 781, 782 (N.M. Ct. App. 1967).  The phrase "or

violence," as used in the statute, "do[es] not substantively state an alternative means of

committing the offense[.]"  *Curley*, 939 P.2d at 1104.  New Mexico courts thus use the

terms "force" and "violence" interchangeably when discussing whether the force

element of the statute has been met by an offense.  *See id.*

The force or fear required under the state robbery statute "must be the moving

cause inducing the victim to part unwillingly with his property.  It must overcome the

victim's resistance.  It must compel one to part with his property.  It must be such that

the power of the owner to retain his property is overcome." *Sanchez*, 430 P.2d at 782

(internal citations omitted).  The "use of force to retain property or to facilitate escape

does not satisfy the force element necessary for the crime of robbery." *Lewis*, 867 P.2d at

1233-34.  Rather, "the use or threatened use of force must be the factor by which the

property is removed from the victim's possession." *Id.* at 1233.  For example, the *Curley*

court concluded that the defendant was entitled to an instruction on the lesser included

offense of larceny even though he shoved the victim before taking her purse, because

the jury could have found that the shove was accidental and independent of the taking,

and that the defendant thus "took the purse by surprise from a person who was not

resisting, and not by force necessary to overcome any resistance."  939 P.2d at 1107.

Whether the force employed during a larceny is sufficient to elevate the offense

to robbery requires an evaluation by the fact-finder.  *See State v. Clokey*, 553 P.2d 1260,

1260 ("The question of whether or not the snatching of the purse from the victim was

accompanied by sufficient force to constitute robbery is a factual determination, within

the province of the jury's discretion.").  *De minimis* force will not do to sustain a robbery

conviction.  *See Curley*, 939 P.2d at 1105 ("[W]hen no more force is used than would be

necessary to remove property from a person who does not resist, then the offense is

larceny, and not robbery.").  Mere "touching or jostling," or even the more overtly

forceful act of pressing a fist into the victim's back while stealing his property, are all

insufficient to establish the force element; such circumstances support only the lesser

21

conviction of larceny.  *Sanchez*, 430 P.2d at 782.  This is so because, as the Supreme
Court of New Mexico has explained, "robbery is a crime designed to punish the use of
violence" and "to protect citizens from violence."  *Bernal*, 146 P.3d at 296.

Defendant argues that the "force" required by the New Mexico robbery statute is
not "violent force" meeting the *Johnson I* standard.  *See doc. 1* at 5; *doc. 14* at 4-5.  This
argument is contrary to controlling New Mexico jurisprudence on the point.  As cited
above, case after case held that robbery requires the force "must overcome the victim's
resistance.  It must compel one to part with his property.  It must be such that the power
of the owner to retain his property is overcome."  *Sanchez*, 430 P.2d at 782 (internal
citations omitted); *see also Curley*, 939 P.2d at 1104-06; *Lewis*, 867 P.2d at 1233-34.  In fact,
the *Curley* court explicitly rejected what it described as "dictum" from *Martinez* "that
even a slight amount of force, such as jostling the victim or snatching away the
property, is sufficient" force for a robbery conviction.  *Curley*, 939 P.2d at 1104 (citing
*Martinez*, 513 P.2d at 403).

The Tenth Circuit recently provided a useful reminder of the nature of the
relevant inquiry in *Harris*, 844 F.3d at 1264-1265.  In considering whether the Colorado
offense of robbery qualified as a "violent felony" under the elements clause of the
ACCA, the *Harris* court began its analysis with the "oft-quoted" language from *Johnson
I*: "We think it clear that in the context of a statutory definition of '*violent* felony,' the
phrase 'physical force' means *violent* force—that is, force capable of causing physical

22

pain or injury to another person." *Id*. at 1264 (citing *Johnson I*, 559 U.S. at 140) (emphasis in original).  The reminder came next:

> It is important to keep in mind why it was necessary for the Court to use the language it did.  For it was rejecting the government's argument that physical force means "force" known in common law battery parlance.  *See Johnson I*, 559 U.S. at 139, 130 S. Ct. 1265 ("There is, however, a more specialized legal usage of the word 'force': its use in describing one of the elements of the common-law crime of battery. . . .").  That is, the force element is satisfied by even the slightest offensive touching.  *Id*. (citing among others 3 William Blackstone, *Commentaries on the Laws of England* 120 (1768) [hereinafter Blackstone] ).  So it makes sense that the Court, in construing the meaning of physical force in the ACCA's *violent* felony definition, referenced "a substantial degree of force," "strong physical force," or "powerful force."  Indeed, the Court was differentiating between the force required for the common law offense of battery.

*Id*. at 1265.  This passage serves to emphasize that, by requiring something more than the slightest offensive touching – "a substantial degree of force" – to satisfy the elements clause of the "violent felony" definition, *Johnson I* did not thereby create a requirement of extreme violence.  As *Harris* highlighted, force "capable of causing physical pain or injury" includes "a slap in the face."  *Id*. (citing *Johnson I*, 559 U.S. at 143).  In fact, the court cited with approval Justice Scalia's concurrence which identifies "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling" as conduct which qualifies as violent force.  *Id*. (quoting *United States v. Castleman*, 134 S. Ct. 1405, 1421 (2014) (Scalia, J., concurring)).  Moreover, the *Harris* court stressed that "in construing the minimum culpable conduct [required by the state statute], such conduct only includes that [to] which there is a 'realistic probability, not a theoretical possibility' the

state statute would apply."  *Id.* at 1264 (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013)).

   With these standards in mind, the court held that the force required by Colorado's robbery statute matched the definition of "physical force" set forth in *Johnson I.  Id.* at 1266-71.  Notably, two features of Colorado robbery which were central to the court's holding are shared in common with the New Mexico crime of robbery. First, as in New Mexico, robbery in Colorado requires a taking "*by* violence or intimidation."  *Id.* at 1266 (citing *People v. Borghesi*, 66 P.3d 93, 99 (Colo. 2003)) (emphasis added); *see also Lewis*, 867 P.2d at 1233 (emphasis added).  That is, both statutes require that the force (or threat of force) used must be the means by which the taking is accomplished.  Second, as in New Mexico, "Colorado's 'robbery statutes are primarily intended to protect persons and not property.'"  *Harris*, 844 F.3d at 1267 (citing *Borghesi*, 66 P.3d at 100-01); *see also Bernal*, 146 P.3d at 296.  Consequently, both statutes emphasize the "assaultive nature of the crime[.]"  *Harris*, 844 F.3d at 1267.

   Admittedly, there are differences between Colorado's and New Mexico's respective robbery jurisprudence by which one could distinguish *Harris* from the present case.  However, *Harris* stands for a broader point.  It serves as a reminder that the definition set forth in *Johnson I* of "physical force," as used in the elements clause of both the ACCA and U.S.S.G. § 4B1.2(a), encompasses actions falling far short of extreme violent force in the nature of Hollywood movies.  *Johnson I* did reject the "slightest

offensive touching" common-law standard of "force," instead demanding "a substantial degree of force."  But even actions like pinching and slapping are sufficiently forceful under *Johnson I* to amount to "violent physical force."  To the undersigned, it appears self-evident that the force required for robbery in New Mexico—force which overcomes the victim's resistance and compels the victim to part with his property—is at least commensurate to the slapping adequate under *Johnson I.*  Therefore, I conclude that the crime of robbery in New Mexico "has as an element the use . . . of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

Even if one were to reject this conclusion, New Mexico robbery would still qualify as a "crime of violence" if it "has as an element the . . . *threatened use* of physical force against the person of another."  *Id*. (emphasis added).  As noted above, New Mexico "robbery is a crime designed to punish the use of violence" and "to protect citizens from violence."  *Bernal*, 146 P.3d at 296.  This foundation is the basis for the New Mexico requirement that the force used must be sufficient to overcome the "resistance of attachment."  *Curley*, 939 P.2d at 1105.  As the *Curley* court explained, "[s]ubtle differences in the amount of force used, alone, is neither a clear nor reasonable basis to distinguish the crime of robbery from that of larceny.  However, if we remember that the reason for the distinction is the increased danger to the person" accompanying the crime of robbery, "then an increase in force that makes the victim aware that her body is resisting could lead to the dangers that the crime of robbery was

designed to alleviate[,]" such as violent altercations or confrontations. *Id*. at 1106. In other words, robbery is distinguished from larceny not just by the force actually used, but also by the force intrinsically threatened.

The analysis set forth by the *Curley* court regarding the force element of New Mexico robbery directly parallels the rationale in *Ramon Silva*, the Tenth Circuit case discussed above with regard to federal bank robbery. 608 F.3d at 670-71 (10th Cir. 2010). There, the court reasoned that the conduct proscribed by the offense of "apprehension-causing" aggravated assault "threatens the use of '*violent*' force because by committing such an act, the aggressor communicates to his victim that he will potentially use '*violent* force' against the victim in the near [] future," and because such conduct "always has the potential to lead to '*violent* force.'" *Id*. (quoting *Johnson I*, 559 U.S. at 140) (emphasis in original). Based upon the reasoning of *Ramon Silva*, the force required to meet the "use of force" element in the New Mexico robbery statute must at the very least satisfy the "*threatened* use of force" portion of the elements clause defining a "crime of violence" under the guidelines.

Finally, Defendant's argument that New Mexico simple robbery cannot be a crime of violence because it does not require the intent to use violent force fails for the same reasons discussed above with regard to bank robbery. *See doc. 1* at 5. "The intent necessary for robbery includes the general criminal intent of conscious wrongdoing[,]" as well as the specific intent to steal. *State v. Puga*, 510 P.2d 1075, 1077 (N.M. Ct. App.

1973).  As explained above, intentional wrongful conduct that constitutes the use or

threatened use of violent physical force against the person of another is enough to

satisfy the elements clause of the guidelines.  *See Ramon Silva*, 608 F.3d at 673.

Based on the foregoing, I conclude that the New Mexico robbery statute "has as

an element the use [and the] threatened use of physical force against the person of

another" as defined by *Johnson I*.  U.S.S.G. § 4B1.2(a)(1).  Therefore, as the presiding

judge in this matter has previously held, all crimes of robbery in New Mexico are

categorically crimes of violence.  *See United States v. Garcia*, *doc. 37*, No. CV 16-0240

JB/LAM (D.N.M. Jan. 31, 2017); *see also United States v. Hurtado*, Magistrate Judge's

Proposed Findings and Recommended Disposition, *doc. 17* at 16-23, No. CV 16-0646

JAP/GJF (D.N.M. Jan. 11, 2017) (concluding that New Mexico robbery qualifies as a

crime of violence under the elements clause of the guidelines); *Contreras v. United States*,

Magistrate Judge's Proposed Findings and Recommended Disposition, *doc. 12* at 8-

18,No. CV 16-0671 RB/SMV (D.N.M. Dec. 6, 2016) (concluding that New Mexico simple

robbery qualifies as a predicate conviction under the elements clause of the ACCA).

Though its decision predates *Johnson I*, the Tenth Circuit Court of Appeals has

reached the same conclusion.  *See United States v. Lujan*, 9 F.3d 890, 891-92 (10th Cir.

1993).  In *Lujan*, the Court of Appeals confronted a defendant convicted of

manslaughter in California and robbery in New Mexico, under the same statute at issue

here.  *Id.* at 891.  In holding that both convictions constitute "violent felonies" under the

ACCA, the court explained: "[The California manslaughter statute] has 'as an element the use, attempted use, or threatened use of physical force against the person of another' and thus is a violent felony under the ACCA.  The New Mexico robbery statute also contains the required element of force[.]"  *Id.* at 892 (quoting and italicizing for emphasis the force element of N.M.S.A. § 30-16-2).

C.   *Armed robbery in New Mexico is a "crime of violence" under the elements clause of the guidelines.*

Armed robbery is governed by the same New Mexico statute as simple (third degree) robbery, although it is a more serious offense requiring proof that a defendant was "armed with a deadly weapon" during the robbery.  N.M.S.A. § 30-16-2.  When that element is proven, the crime is elevated to a second degree felony for the first offense and elevated to a first degree felony for second and subsequent offenses.  *See id.*

The New Mexico Criminal Code provides the uniform definition of "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm," followed by a list of examples of weapons that meet this definition.  N.M.S.A. § 30-1-12(B).  The same statute sets forth the uniform definition of "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body."  *Id.* § 30-1-12(A).

28

There can be no doubt that, if use of a deadly weapon during the robbery were required for a conviction for armed robbery, armed robbery would constitute a crime of violence under the guidelines.  However, some New Mexico cases suggest that no use of the weapon is required.  *See, e.g.*, *State v. Duran*, 570 P.2d 39, 40-41 (N.M. 1977) (rejecting as "not necessarily true" the State's contention that a jury's finding of guilt on a New Mexico armed robbery charge "necessarily determined that defendant used a firearm," as required to justify a firearm enhancement); *see also State v. Chouinard*, 603 P.2d 744, 745 (N.M. 1979) (distinguishing a statute providing for a sentence enhancement where a firearm is "used" in the commission of a felony from statutes allowing punishment of mere possession and non-use, including the New Mexico armed robbery statute as a specific example, and citing *Duran* for the proposition that firearm "'[u]se' is different from 'possession'").

However, the New Mexico Court of Appeals has made clear that whether the element of having been "armed with a deadly weapon" during the commission of a robbery is satisfied requires more than determining that the defendant merely possessed such a weapon.  *See State v. Hamilton*, 6 P.3d 1043 (N.M. Ct. App. 2000); *see also Lewis*, 867 P.2d at 1232-33 (use of a weapon solely to facilitate escape does not constitute armed robbery where no force is used or threatened to obtain a victim's property prior to escape).  In *Hamilton*, the defendant broke into the victim's home, and began demanding and taking property.  6 P.3d at 1045.  When he entered the home, he

did not possess a firearm.  *Id*.  However, during the course of his initial thefts, he found

and took a firearm:

> After finding the handgun, Defendant told Means to give him all of her
> money.  She again told Defendant that she did not have any money, but
> Defendant reached in[to] Means's purse and found a twenty dollar bill,
> which he took.  Next, Defendant pointed the gun at Means's abdomen
> then moved the gun quickly to one side and fired, narrowly missing
> Means but putting a hole in the couch.

*Id*.

The defendant in *Hamilton* argued that he could not be convicted of armed

robbery because he acquired the firearm during the course of the robbery.  *Id*.  In its

review of relevant cases, the court reasoned that "the determination of whether a

defendant who seizes a weapon during the commission of a robbery is armed 'while'

committing the robbery is highly fact sensitive.  When the defendant acquires the

weapon and *how he uses it* after its acquisition are paramount."  *Id*. (emphasis added).

The *Hamilton* holding could be read as focusing on the meaning of "while."  Under this

interpretation, the crucial question would be whether the defendant possessed the

firearm at the time the robbery was occurring.  However, if true, "how he uses it after

its acquisition" would not be relevant, let alone "paramount."  The court would have

considered only when the firearm was acquired and whether the robbery was still in

progress.  Instead, *Hamilton* supports the conclusion that mere possession of the firearm

during the robbery without any use whatsoever is insufficient for the crime of armed robbery under New Mexico law.

Even assuming without deciding that armed robbery could be committed where a defendant never uses a deadly weapon during the commission of the offense, Defendant's conviction is categorically a crime of violence under the guidelines. This is so, first of all, because simple robbery alone satisfies the requirements of the elements clause, as discussed above. Thus, commission of a simple robbery while possessing a firearm without using it also satisfies the requirements of the elements clause.

Secondly, in light of the relevant state law, Defendant was necessarily convicted of (1) using or threatening the use of force against the person of another, (2) such that the victim's resistance to parting with his property was overcome, (3) while armed with a weapon capable of producing death or great bodily harm. *See* N.M.S.A. § 30-16-2; *Bernal*, 146 P.3d at 296; *Sanchez*, 430 P.2d at 782; N.M.S.A. § 30-1-12(B). Particularly given the possession of a deadly weapon, there is categorically no way for Defendant to have engaged in such conduct without at the very least "communicat[ing] to his victim that he will potentially use '*violent* force against the victim in the near [] future." *See Ramon Silva*, 608 F.3d. at 670 (quoting *Johnson I*, 559 U.S. at 140). Such an act thus always threatens the use of "force capable of causing physical pain or injury to another person" and therefore meets the *Johnson I* standard.

31

D.      *Defendant's federal and state robbery offenses are enumerated as "crimes of violence" under the guidelines.*

At the time of Defendant's sentencing in 2006, the Commentary to U.S.S.G. § 4B1.2(a) regarding the definition of "crime of violence" stated that "[f]or the purposes of this guideline -- … 'Crime of violence' includes … robbery … ."  U.S.S.G. § 4B1.2 cmt. n.1 (2005).[7]  As explained below, neither New Mexico robbery nor federal bank robbery is broader that the definition of generic robbery.  Therefore, in the alternative to the elements clause analysis above, I recommend finding that Defendant's robbery convictions were enumerated as a "crimes of violence" at the time of his sentencing.

Defendant cites authority from the Northern District of California in which a district court found that robbery was contained in the guideline commentary solely as "an example of an offense that previously qualified as a crime of violence under the residual clause[,]" and therefore concluded that its inclusion in the commentary is not binding after *Johnson II*.  *Doc. 14* at 5 (quoting *United States v. Walker*, No. CR 12-0430 CW, 2016 WL 5921257, at *6 (N.D. Cal. Oct. 5, 2016)).  I recommend that the Court decline to follow this decision for two reasons.

First, the conclusion of the *Walker* court is inconsistent with the guidance offered by the Tenth Circuit post-*Johnson II*.  Indeed, in the very case where it held that the *Johnson II* decision applies to render the residual clause of the guidelines

---

[7] A subsequent amendment to the guideline includes robbery in the "enumerated offenses" clause of the guideline definition of "crime of violence."  U.S.S.G. § 4B1.2(a)(2) (2016).

unconstitutional, the Court of Appeals explained that an offense constitutes a "crime of violence" under the guidelines "if (1) it has as an element the use, attempted use, or threatened use of physical force against the person of another [or] (2) it is one of the offenses enumerated in the Guidelines or accompanying commentary as a crime of violence[.]" *Madrid*, 805 F.3d at 1207. In its subsequent analysis, the *Madrid* court clearly distinguished these two ways that an offense may qualify as a crime of violence from the third way of qualifying under the now-defunct residual clause. *See id.* at 1207-10. In so doing, the Tenth Circuit gave no indication that the commentary is merely reiterative of the three clauses defining "crime of violence" under § 4B1.2, or that courts should disregard portions of the commentary based on their own interpretations of why—and under the authority of which clause—a particular offense was enumerated as a "crime of violence" therein. Defendant does not present any reason why the Court should opt to agree with a district court in a sister circuit rather than applying the analytical roadmap provided to lower courts by the Tenth Circuit in *Madrid*.

Second, a close reading of the text of the pre-*Johnson II* guideline commentary belies the interpretation of *Walker* court. At the time of Defendant's sentencing in 2006, Application Note 1 of the commentary regarding the definition of "crime of violence" explained:

> "Crime of violence" includes murder, manslaughter . . . robbery . . . and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the

conduct set forth (<u>i.e.</u>, expressly charged) in the count of which the defendant was convicted involved use of explosives . . . or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. n.1 (2005).

The second sentence cited above encompasses all three clauses of the definition of "crime of violence"—the elements clause, the enumerated offenses clause, and the residual clause. *See id.* § 4B1.2(a)(1)-(2). Under Defendant's proposed interpretation, then, the Sentencing Commission merely listed examples of crimes that fall under one of the three clauses of the "crime of violence" definition in the first sentence, only to follow those examples with a second sentence explaining that "[o]ther offenses" qualifying as "crimes of violence" include those that, again, fall under one of the three clauses of the "crime of violence" definition. Such a reading renders the first sentence wholly superfluous, and also ignores the plain meaning of the phrase "[o]ther offenses" at the beginning of the second sentence. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, (2001) (internal quotations and citation omitted). Therefore, a better reading of the commentary is that the two sentences serve distinct purposes—the first lists examples of generic crimes that the Sentencing Commission has decided are categorically crimes of violence, while the second explains that many *other*

34

*offenses* which do not match those generic offenses may also qualify as "crimes of violence" under the three clauses of the definition given in § 4B1.2(a).

For these reasons, I conclude that the Court can rely upon robbery's inclusion in the Commentary to conclude that generic robbery was an enumerated offense at the time of Defendant's sentencing.

The next question is whether New Mexico robbery is broader than the definition of generic robbery. If so, it cannot qualify as a "crime of violence" even under the new "enumerated offenses" clause of the guidelines that includes robbery. *See Taylor v. United States*, 495 U.S. 575, 598 (1990) (instructing courts to define enumerated offenses listed by Congress in "the generic sense in which the term is now used in the criminal codes of most [s]tates"). When a state statute defines an offense in *narrower* terms than the generic definition of the offense, however, a defendant's conviction under such a statute "necessarily implies that the defendant has been found guilty of all the elements of [the] generic [offense]." *Id.* at 599. The Court therefore must consider whether the New Mexico statute defining robbery "corresponds to the modern generic view of any of the offenses enumerated" in the relevant guideline—here, U.S.S.G. § 4B1.2(a)(2). *United States v. Castillo*, 811 F.3d 342, 345-46 (10th Cir. 2015). For the following reasons, I recommend finding that it does.

Generic robbery is the unlawful taking of property from another person or from the immediate presence of another by force or intimidation. *See United States v. Lockley*,

632 F.3d 1238, 1244 (11th Cir. 2011) (quoting *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010)); *United States v. Tellez-Martinez*, 517 F.3d 813, 815 (5th Cir. 2008) (describing generic robbery as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person" (internal alteration omitted)); *Robbery*, BLACK'S LAW DICTIONARY (9th ed. 2009) (defining robbery as "[t]he illegal taking of property from the person of another, or in the person's presence, by violence or intimidation"). As discussed above, New Mexico robbery is defined as "the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." N.M.S.A. § 30-16-2. New Mexico robbery also requires that this use or threatened use of force be the lever by which the perpetrator unlawfully deprives another of property. *Sanchez*, 430 P.2d at 782. These elements do not encompass conduct any broader than the elements of generic robbery, as the elements are nearly identical.

Moreover, the "uniform generic definition" of robbery includes crimes "in which the accused uses force or violence either during the taking or the getting away," which is a modern divergence from the traditional common law requirement that "robbery occurred only when the perpetrator used force or intimidation before or during the taking itself[.]" *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1233 (10th Cir. 2009) (emphasis omitted). In contrast, New Mexico still requires that a defendant "must use force before or during the taking itself" in order to commit robbery. *Id.* at 1235; *see also*

36

*Lewis*, 867 P.2d at 1233-34.  This requirement is a relic of the strict common law to which only five states, including New Mexico, still adhere.  *Garcia-Caraveo*, 586 F.3d at 1235. New Mexico's robbery statute is thus *narrower* than the uniform generic definition of robbery, which "necessarily implies that the defendant has been found guilty of all the elements of [the] generic [offense]."  *Taylor*, 495 U.S. at 599.  Defendant was therefore found guilty of generic robbery, which was enumerated as a "crime of violence" in the guidelines commentary at the time he was sentenced, and which is presently enumerated as a "crime of violence" in the definition itself.  U.S.S.G. § 4B1.2 cmt. n.1 (2005); U.S.S.G. § 4B1.2(a)(2) (2016).

    Similarly, the elements of federal bank robbery by means of intimidation under 18 § 2113(a)—"by intimidation, tak[ing], or attempt[ing] to take, from the person or presence of another . . . money . . . belonging to, or in the care, custody, control, management, or possession of, any bank . . ."—match the elements of generic robbery— "the unlawful taking of property from another person or from the immediate presence of another by force or intimidation."  The Eleventh Circuit Court of Appeals has recently reached the same conclusion, as have two district courts.  *See Jenkins*, 2016 WL 3101281, at * 4; *United States v. Johnson*, No. 15-15223, 2016 WL 6775916, at *2 (11th Cir. Nov. 16, 2016); *United States v. McGuire*, Case Nos. 6:92-cr-10096-JTM-1, 6:16-cv-01166-JTM, 2016 WL 4479129, at *2 (D. Kan. Aug. 25, 2016); *United States v. Savage*, Case No. LA CV 16-03864-VBF, 2017 WL 130008, at *36-37 (C.D. Cal. Jan. 12, 2017).  The

undersigned can find no court that has addressed this question and arrived at a different conclusion.

In conclusion, each of Defendant's convictions under 18 U.S.C. § 2113(a) and N.M.S.A. § 30-16-2 is categorically a "crime of violence" under U.S.S.G. § 4B1.2 without relying on its vague residual clause. As such, even after *Johnson II*, Defendant's prior robbery convictions and instant offense of bank robbery were properly used to enhance his sentencing guidelines pursuant to that provision. Therefore, I recommend denying Defendant's motion on that ground. In addition, should the Court disagree that New Mexico simple robbery and armed robbery satisfy the elements clause of the "crime of violence" definition in the guidelines, I recommend that the Court nevertheless preserve Defendant's sentence on the basis that these crimes are enumerated "crime of violence" offenses.

## V.   CONCLUSION

The application of *Johnson II* to the guidelines would be a non-watershed procedural rule, and thus would not have retroactive effect to Defendant's sentence under the *Teague* analysis. Therefore, I recommend denying Defendant's motion on that ground.

Should the Motion not be denied on non-retroactivity, I recommend that the Court find that Defendant's instant offense of federal bank robbery as well as his past convictions for robbery and armed robbery in New Mexico remain "crimes of violence"

under U.S.S.G. § 4B1.1, as defined in § 4B1.2 even after redacting its residual clause, and

that the career offender enhancement was thus properly applied to establish a guideline

sentencing range of 151 to 188 months.  Therefore, I recommend denying Defendant's

motion on that ground.


_____
GREGORY B. WORMUTH
United States Magistrate Judge


> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**